IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JACKIE D. RAKES,                                    09-CV-821-BR

       Plaintiff,                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center
Suite 130
Portland, OR 97223
(503) 245-6309

       Attorney for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA  98104
(206) 615-2113

          Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Jackie D. Rakes seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which he denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


                    <u>**ADMINISTRATIVE HISTORY**</u>

     Plaintiff filed his applications for SSI and DIB on December 13, 2002, and alleged a disability onset date of

2 - OPINION AND ORDER

April 1, 2001.  Tr. 51-53, 483-94.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on November 14, 2004.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, two lay witnesses, and a VE testified.  Tr. 584-644.

The ALJ issued a decision on January 28, 2005, in which he found Plaintiff was not disabled and, therefore, not entitled to benefits.  Tr. 18-24.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on November 21, 2006, when the Appeals Council denied Plaintiff's request for review.  Plaintiff appealed the decision of the Commissioner to this Court.

On February 1, 2008, Magistrate Judge Thomas Coffin issued an Opinion and Order in which he remanded the matter to the Commissioner for further proceedings with instructions to consider properly the lay-witness testimony as well as the opinion of Plaintiff's treating Physician's Assistant (PA) Erika Wilson.  Tr. 676-81.

On remand the ALJ conducted a hearing on January 29, 2009, which Plaintiff did not attend.[2]  A VE testified at the hearing.

---

[1]  Citations to the official transcript of record filed by the Commissioner on March 31, 2010, are referred to as "Tr."

[2] The record reflects Plaintiff received notice of the hearing and his attorney spoke with him prior to the hearing. Plaintiff's counsel did not know why Plaintiff failed to attend the hearing.  Tr. 817.

The ALJ issued a decision on March 30, 2009, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 653-66.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on August 3, 1958.  Tr. 25.  Plaintiff was 46 years old at the time of the first hearing and 50 years old at the time of the second hearing.  Plaintiff has a ninth-grade education.  Tr. 51.  Plaintiff has past relevant work experience as a "Stores Laborer," Christmas-tree-farm laborer, and machine castor.  Tr. 664.

Plaintiff alleges disability due to pain in his left knee, lower back, and left elbow.  Tr. 67.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 656-60.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must

4 - OPINION AND ORDER

demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational

interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a

number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p at *4.

In Step Four, the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his April 1, 2001, alleged onset date. Tr. 656.

At Step Two, the ALJ found Plaintiff has the severe impairments of a degenerative joint disease of the left knee and left elbow; degenerative disc disease of the "thoracic-lumbar spines"; and personality disorder, not otherwise specified.

8 - OPINION AND ORDER

Tr. 656.  The ALJ found Plaintiff's other alleged impairments of hypertension and hepatitis to be nonsevere.  Tr. 656.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 27.  The ALJ found Plaintiff has the RFC to perform "modified sedentary-to-light exertion with postural and vocational nonexertional limitations"; to lift and to carry ten pounds frequently and 20 pounds occasionally; to stand and to walk "for up to 2-hours [*sic*] in each activity (cumulatively, not continuously) in an 8-hour workday with normal breaks"; to sit for six hours in an eight-hour workday; to climb stairs and ramps, to bend, to balance, to kneel, to crouch, and to crawl occasionally; and to perform routine, repetitive tasks that do not require any "public contact in the performance of work tasks."  Tr. 664.

At Step Four, the ALJ concluded Plaintiff is not capable of performing his past relevant work.  Tr. 664.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 665. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly

9 - OPINION AND ORDER

rejected lay-witness testimony; (2) improperly rejected the testimony of PA Erika Wilson; (3) did not include all of Plaintiff's limitations in his evaluation of Plaintiff's RFC; (4) did not include all of Plaintiff's limitations in the hypothetical to the VE; and (5) relied on the VE's allegedly inaccurate testimony as to the number of available jobs in the national economy.

## I.   The ALJ did not err when he rejected lay-witness testimony.

Plaintiff contends the ALJ erred when he rejected the lay-witness testimony of Dave Ross, Thomas Sanford, Loretta Herron, and John Herron.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout,* 454 F.3d at 1054.

### A.   Dave Ross

Plaintiff's friend and former boss, Dave Ross, testified at the first hearing that Plaintiff had trouble walking

10 - OPINION AND ORDER

and "constantly" had to sit down because his left knee was sore.
Tr. 632.  Ross testified when he worked with Plaintiff from 1999
to 2001, Plaintiff was not able to lift rolls of pipe onto a
stool and he had trouble bending over and keeping up with the
other workers.  Tr. 634-35.  Ross testified Plaintiff would often
rub his arm, possibly due to muscle cramps, and seemed to be
bothered by pain about one-third of the time.  Tr. 635.  Ross
testified Plaintiff was "a lot slower" than the other workers and
missed at least one day of work per week.  Tr. 636.

      The ALJ found Ross's testimony to be "of questionable
evidentiary value" because Plaintiff "demonstrated greater
functioning . . . performing 80 hours of community service in
2004" after he was sentenced to community service for use of
intoxicants.  Tr. 663, 811.  The ALJ also noted Ross testified he
could not be sure if Plaintiff was dropping things at work
because Ross was not facing him during work and did not pay
attention.  Tr. 663.

      Accordingly, the Court concludes the ALJ did not err
when he rejected the lay-witness testimony of Dave Ross because
the ALJ provided legally sufficient reasons based on substantial
evidence in the record for doing so.

**B.   Thomas Sanford, Loretta Herron, and John Herron**

      Thomas Sanford, Loretta Herron, and John Herron
provided third-party written statements in which they stated

11 - OPINION AND ORDER

Plaintiff "takes a long time to know because of heavily guarded feelings," "has trouble getting motivated," has "major arm and leg pain," his "mind wanders from task[s] at hand," and his "mood alters at the snap of your fingers." Tr. 294-300. Each of these witnesses believed these symptoms indicated Plaintiff had marked restrictions in his activities of daily living and moderate restrictions in social functioning, concentration, persistence and/or pace and abnormal behavior patterns. *Id.* Each of these lay witnesses also indicated Plaintiff "seem[s] to have one or more health problems 'resulting in the need for changes in position or posture more than once every two hours'" due to his arm and leg pain. Tr. 299.

The ALJ did not give any weight to these statements on the ground that they are "very short, conclusive statements that do not clearly address or explain the conditions expressed." Tr. 663.

The Court concludes the ALJ did not err when he rejected the lay-witness statements of Thomas Sanford, Loretta Herron, and John Herron because the ALJ provided legally sufficient reasons based on substantial evidence in the record for doing so. *See, e.g., Mackey v. Astrue*, No. C98-5707JRC, 2010 WL 2330390, at *3 (W.D. Wash. June 7, 2010)(AlJ did not err when he rejected conclusion in lay-witness statements that the plaintiff was disabled because the statements "provide[d] little

12 - OPINION AND ORDER

context . . . and very little information.").

## II.  The ALJ did not err when he found the November 26, 2002, letter of PA Erika Wilson to be of little evidentiary value.

Plaintiff contends the ALJ erred when he found PA Wilson's November 26, 2002, letter to be "of little evidentiary value." Tr. 657.  In her letter, PA Wilson noted Plaintiff "has been unable to work due to chronic and unremitting left knee pain and low back pain."  Tr. 401.  PA Wilson noted Plaintiff was "awaiting an approval for a visit to Dr. Durkin for further evaluation and treatment recommendations for the above stated problems.  Until that time [Plaintiff] will continue to be unable to work."  Tr. 401.  PA Wilson stated she was "hopeful that Dr. Durkin will be able to help in returning [Plaintiff] to some sort of suitable employment."  Tr. 401.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors.  SSR 06-03p, at *2.  The Social Security Administration notes:

> Opinions from . . . medical sources, who are not
> technically deemed acceptable medical sources
> under our rules, are important and should be
> evaluated on key issues such as impairment
> severity and functional effects, along with the

other relevant evidence in the file.

SSR 06-03p, at *3.

As noted, the ALJ found PA Wilson's letter to be of "little evidentiary value" because she did not have any clinical x-rays or other findings "in response to Plaintiff's . . . claim of low back pain" and her letter does not contain anything "of value in assessing [Plaintiff's] exertional and nonexertional capacities." Tr. 657. In addition, x-rays of Plaintiff's knee on April 14, 2002, reflected Plaintiff had only mild degenerative disease. Tr. 369. The ALJ also noted x-rays of Plaintiff's knee on March 19, 2003, reflected only moderate degenerative joint disease in Plaintiff's left elbow and only mild degenerative disease of Plaintiff's lumbar spine. Tr. 400. Similarly, x-rays on November 18, 2003, reflected Plaintiff had only mild degenerative disease of the thoracic spine with "small bones spurs." Tr. 543.

On this record, the Court concludes the ALJ did not err when he found PA Wilson's November 26, 2002, letter to be "of little evidentiary value" because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err in his assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred in his assessment of Plaintiff's RFC because the ALJ failed to include Plaintiff's

14 - OPINION AND ORDER

limitations set out by the lay witnesses.

Because the Court has found the ALJ properly rejected or gave little weight to the statements of the lay witnesses, the Court concludes the ALJ did not err when he did not consider any limitations based on those statements in his assessment of Plaintiff's RFC.

**IV. The ALJ posed a sufficient hypothetical to the VE.**

Plaintiff contends the ALJ did not pose an adequate hypothetical to the VE because the ALJ failed to include Plaintiff's limitations as set out in the lay witnesses' statements and the ALJ relied on the VE's testimony that Plaintiff could perform jobs that exceed Plaintiff's intellectual capabilities.

**A.    The hypothetical to the VE was sufficient.**

Because the Court concludes on this record that the ALJ did not err when he failed to consider Plaintiff's limitations set out in lay-witness statements when assessing Plaintiff's RFC, the Court also concludes the ALJ did not err when he did not include those alleged limitations in his hypothetical to the VE.

**B.    Jobs identified by the VE.**

Plaintiff also contends the ALJ erred when he relied on the VE's testimony because the VE identified three jobs that "clearly exceed Plaintiff's intellectual and educational abilities."

In response to the ALJ's hypothetical, the VE
identified three jobs that Plaintiff could perform:  small-
products assembler, extruder-machine operator, and electrical-
component assembler.  Plaintiff notes the small-products
assembler and extruder-machine operator jobs require Math and
Language Level 1 skills and the electrical-component assembler
job requires Math Level 1 and Language Level 2 skills.  The
Dictionary of Occupational Titles (DOT) defines the skills
required for Math Level 1 as:  "Add and subtract two-digit
numbers.  Multiply and divide 10's and 100's by 2, 3, 4, 5.
Perform the four basic arithmetic operations with coins as part
of a dollar.  Perform operations with units such as cup, pint,
and quart; inch, foot, and yard; and ounce and pound."
*Dictionary of Occupational Titles*, Appendix C - Components of the
Definition Trailer, 1991 WL 688702 (1991).  The DOT defines the
skills required for Language Levels 1 and 2 as follows:

> Language:  Level 1 - READING:  Recognize meaning
> of 2,500 (two- or three-syllable) words.  Read at
> rate of 95-120 words per minute.  Compare
> similarities and differences between words and
> between series of numbers.

> Language:  Level 2 - READING:  Passive vocabulary
> of 5,000-6,000 words.  Read at rate of 190-215
> words per minute.  Read adventure stories and
> comic books, looking up unfamiliar words in
> dictionary for meaning, spelling, and
> pronunciation.  Read instructions for assembling
> model cars and airplanes.

*Id*.  Plaintiff testified at the first hearing that he cannot

16 - OPINION AND ORDER

completely read a newspaper; is unable to perform any math computations; and, therefore, lacks the skills to perform the jobs identified by the VE.  Tr. 600-01, 609-10.

        The ALJ, however, found Plaintiff's testimony not credible based in part on the psychodiagnostic evaluation of Plaintiff by Lawrence J. Lyon, Ph.D., examining psychologist. Dr. Lyon concluded Plaintiff exaggerated his mental and physical symptoms, and he did not find any "objective support . . . for problems with long-term, short-term, or immediate memory." Tr. 420.  Dr. Lyon also noted Plaintiff was able to do "fairly simple arithmetic problems."  Tr. 420.  Plaintiff has not challenged the ALJ's conclusion that Plaintiff's testimony was not credible.  Moreover, the Commissioner assumes claimants with a limited education have the ability to perform the reasoning, arithmetic, and language necessary to perform unskilled work such as the jobs identified by the VE.  *See* 20 C.F.R. § 404.1564(b)(2) and (b)(3), § 416.964(b)(2) and (b)(3).  Accordingly, the Court concludes on this record that the ALJ did not err when he did not accept Plaintiff's stated intellectual limitations and concluded Plaintiff could perform the jobs identified by the VE.

        In summary, the Court concludes the ALJ did not err when he relied on the VE's testimony as to jobs in the national economy that Plaintiff could perform.


17 - OPINION AND ORDER

**V.  The ALJ did not err when he relied on the VE's testimony as to the number of jobs available in the national economy that Plaintiff can perform.**

Plaintiff contends the ALJ erred when he relied on the VE's testimony as to the number of small-products assembler, extruder-machine operator, and electrical-component assembler jobs available in the national economy because the ALJ failed to address letters that Plaintiff submitted from the United States Departments of Labor and Commerce and the Oregon Employment Division in which those agencies indicated they do not track numbers of jobs available by DOT code.

The Ninth Circuit, however, has rejected similar arguments and concluded an ALJ may properly rely solely on the VE's testimony as to the number of jobs available in the national economy and does not have to address additional vocational materials submitted by a claimant. *See, e.g.*, *Howard v. Astrue*, 330 F. App'x 128 (9th Cir. 2009)(Letters "from the U.S. Department of Labor's Bureau of Labor Statistics, the U.S. Census Bureau, and the Oregon Employment Department establishing that none of these agencies gathers the precise information with respect to the availability of jobs to which the VE testified and on which the ALJ and magistrate judge relied . . . submitted by [Plaintiff] did not provide 'significant probative evidence' regarding how many jobs were available in the local and national economies.  The ALJ properly relied on the VE's testimony for

18 - OPINION AND ORDER

that information."); *Crane v. Barnhart*, 224 F. App'x 574, 578 (9th Cir. 2007)(same).

Accordingly, the Court concludes the ALJ did not err when he relied on the VE's testimony as to the number of jobs available in the national economy that Plaintiff can perform.


## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 3rd day of January, 2011.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


19 - OPINION AND ORDER